IN RE APPLICATION OF MARIA C. FOR ADMISSION
TO THE BAR OF MARYLAND

[Misc. No. 24, September Term, 1982.]

*Decided October 26, 1982.*

The matter was argued before MURPHY, C. J., and SMITH,
ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Phillip G. Dantes* for applicant.

Order of Court. SMITH, J., dissents and filed a dissenting
opinion at page 538 *infra.*

*O R D E R*

Upon consideration of the favorable recommendation of
the State Board of Law Examiners for admission to the Bar
of Maryland of MARIA C., it is this 26th day of October, 1982

ORDERED, by the Court of Appeals of Maryland, a major-
ity of the Court concurring, that the favorable recommenda-
tion of the State Board be, and it is hereby, adopted; and it
is further

ORDERED that the said applicant be admitted to the Bar
of Maryland upon taking the oath prescribed by the statute,
subject only to the filing of an updating oath as to character
information.

Judge Smith dissents.

*Smith, J., dissenting:*

I dissent from admitting this convicted shoplifter to the
bar. Lest there be any misunderstanding on the subject, I
observe that the recommendation from the Board of Law
Examiners for her admission was not unanimous. Also,

there was dissension on the issue in the character committee.

Maria C. concealed the fact of her conviction when she filled out her law school application in 1977. She likewise concealed that fact in 1975 when she completed an employment questionnaire prior to being hired by the Supreme Bench of Baltimore City as a bailiff to a juvenile master. For no apparent reason she showed herself on the latter application to be three years older than she actually was. Moreover, in a letter to the character committee under date of May 12, 1981, she stated, "I concealed this conviction, not only on my application to the . . . School of Law, *but on all job applications filled out since that time."* (Emphasis added.) It is evident also from a perusal of the transcript of the hearing before the character committee that some members of the committee believed she was not completely candid in her explanations of her driving record and the fact that a number of motor vehicle fines went unpaid over a number of years.

There was a suggestion at oral argument in this Court and also before the character committee that this young woman should be commended for her frankness because her conviction was under the name of Smith and not under the surname to which she was born and which she apparently proposes using professionally. Accordingly, it was argued that this conviction would never have been discovered had she not disclosed it to the Board of Law Examiners. What this argument completely overlooks is the fact that the report to the character committee from the Baltimore City Police Department reflects the arrest for this shoplifting incident *under her proper name,* but states there is no record of the disposition. The reason for a lack of a record of the disposition undoubtedly is because it came under the name of Smith. However, with that report it is highly improbable that an alert character committee, such as the one in the Eighth Judicial Circuit which considered her application, would have failed to interrogate the applicant on the subject. Moreover, since she disclosed in her application for admission to the bar that she had also been known by the name Smith,

I strongly suspect that once that Baltimore City Police Department report was received any investigator worth his salt would have uncovered the conviction promptly. Accordingly, that argument carries absolutely no weight with me.

I understand the travail which this young lady says she has been through. I think she is to be commended for her apparent desire to turn her life around. However, this should not be a basis for determining whether she has the moral character requisite for admission to the bar.

Thomas Paine, the political pamphleteer of the American Revolution, observed in *The American Crisis* XIII (1783), "Character is much easier kept than recovered." I agree. One much wiser than I said, "[B]y their fruits ye shall know them." *Matthew* 7:20 (King James). We can only judge this woman's character by her actions, which include shoplifting and continued deception.

Our requirement that a candidate show himself to be possessed of good moral character is for the purpose of protecting the public. In the same manner, we have said the imposition of a sanction on an erring attorney is not for purposes of punishment of the individual lawyer but for the protection of the public. See, *e.g., Attorney Griev. Comm'n v. Pattison,* 292 Md. 599, 609, 441 A.2d 328 (1982); *Attorney Griev. Comm'n v. Engerman,* 289 Md. 330, 346, 424 A.2d 362 (1981); *Attorney Griev. Comm'n v. Kerpelman,* 288 Md. 341, 382, 420 A.2d 940 (1980), *cert. denied,* 450 U.S. 970 (1981); *Attorney Griev. Comm'n v. Lockhart,* 285 Md. 586, 596-97, 403 A.2d 1241 (1979), and other cases cited in those opinions. The practice of law often involves handling the funds of clients running into tens of thousands and even hundreds of thousands of dollars. This can and does present a temptation to some individuals, as experience has amply demonstrated. Therefore, I regard honesty as one of the most important traits of character which should be required of a prospective lawyer. He should be forthright and honest in all of his dealings, but particularly where the funds and property of others are concerned. When a person is admitted to the Maryland Bar he becomes an officer of this Court. When we admit him we are in effect certifying to the general public

that he is a person to whom the affairs of others may be entrusted safely.

Given this young woman's prior record, how can we *know* that her demonstrated qualities of dishonesty, untruthfulness, and lack of candor will not again rise to the surface? We are unable to see inside her head. A person's character is far more accurately indicated by his prior actions than by all of the recommendations that could possibly be made by good friends. Once certain shortcomings have been indicated by one's actions, a person simply should not be placed in a position where he may succumb to temptations similar to those which have led him astray on earlier occasions. I suggest that an employer would not place a convicted, but reformed, embezzler in a position to handle substantial amounts of money; a convicted, but reformed, pimp in charge of a women's dormitory; or one convicted of unlawfully distributing controlled dangerous substances, who has likewise reformed, in a position to supervise drug distribution for a legitimate drug supply house. In fact, in any of those situations, I dare say that if a case were to reach us involving a fall from grace of such individuals, my colleagues would be inclined to comment that the employer's action was analogous to contributory negligence.

Under the circumstances I feel that I would be derelict in my responsibility to the people of Maryland were I to join in certifying that this young woman has the requisite moral character to handle the affairs of others. Nevertheless, I wish her well in the practice of law — and hope she will prove my fears unfounded.